UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

№ 18-cv-3042 (RRM) (RER)

_____

Trustees of the Local 7 Tile Industry Welfare Fund, Trustees of the Local 7 Tile Industry Annuity Fund, Trustees of the Tile Layers Local Union 52 Pension Fund, Trustees of the Bricklayers & Trowel Trades International Pension Fund, and Trustees of the International Masonry Institute,

Plaintiffs,

versus

Gibraltar Contracting, Inc.,

Defendant.

_____

**REPORT & RECOMMENDATION**

_____

**December 20, 2018**

**To the Honorable Roslynn R. Mauskopf
United States District Judge**

**RAMON E. REYES, JR., U.S.M.J.:**

Trustees of the Local 7 Tile Industry Welfare Fund, Trustees of the Local 7 Tile Industry Annuity Fund, Trustees of the Tile Layers Local Union 52 Pension Fund, Trustees of the Bricklayers & Trowel Trades International Pension Fund, and Trustees of the International Masonry Institute (collectively, "Plaintiffs") bring this action pursuant to Sections 502(g)(2) and 505 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1132(g)(2), 1145, and Section 301 of the Labor Management Relations Act of 1947 ("LMRA")[1] §§ 185. Plaintiffs allege that Gibraltar Contracting, Inc. ("Defendant" or "Gibraltar") has violated ERISA by failing to make required contributions pursuant the terms of a collective bargaining agreement

---

[1] Also known as the Taft-Hartley Act.

("CBA" or "the Agreement"). The Clerk of the Court entered default against Defendant on August 14, 2018, (Dkt. No. 9), and Plaintiffs moved for default judgment on October 3, 2018. (Dkt. No. 10). Your Honor subsequently referred the motion for default judgment to me for a report and recommendation. (Order dated 10/04/2018). For the reasons set forth below, I respectfully recommend that a default judgment be entered against Defendant in the amount of $513,874.88, plus pre- and post-judgment interest to be calculated according to the date on which judgment is entered.

## BACKGROUND

Plaintiffs are employer and employee trustees of multiemployer labor-management trust funds organized and operated pursuant to various collective bargaining agreements. (Dkt. No. 1 ("Compl.") ¶ 4). Each trust fund qualifies is a "benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3). (*Id.* ¶¶ 4, 5). Gibraltar is a New York corporation that was, at relevant times, engaged in business as an "employer" as defined by Section 3(5) of ERISA and as an "employer in an industry affecting commerce" within the meaning of Section 301 of the LMRA. (*Id.* ¶ 6 (citing 29 U.S.C. §§ 1002(5), 185)). Gibraltar entered into a collective bargaining agreement with the Tile Setters and Tile Finishers Union of New York and New Jersey, Local Union No. 7 of the International Bricklayers and Allied Craftworkers ("the Union"). The Union is a "labor organization" within the meaning of the LMRA, and it represents "employees in an industry affecting commerce" as defined by that Act. (*Id.* ¶ 7 (citing 29 U.S.C. §§ 185, 142)).

The Agreement bound the parties at all times relevant to this suit.[2] (Compl. ¶ 8). Pursuant to the Agreement, Gibraltar was required to make specified hourly contributions to certain benefit funds, including those for which Plaintiffs are trustees, as well as various entities on whose behalf the funds act as collection agents. (*Id.* ¶ 9). The mandated contributions were to correspond with "covered work," i.e., work performed in the trade and geographical jurisdiction of the Union. (*Id.*). The Agreement required Gibraltar to report the number of hours of covered work each employee performed. (*Id.* ¶ 10).

The Agreement also set forth interest rates for delinquent payments. Specifically, Gibraltar would be liable to Plaintiffs Trustees of the Local 7 Tile Industry Welfare Fund, Trustees of the Local 7 Tile Industry Annuity Fund, Trustees of the Tile Layers Local Union 52 Pension Fund (collectively, "Local 7 Benefit Funds") for interest on the amount of its unpaid contributions at an annual rate of 10%. (*Id.* ¶ 11). Gibraltar would be liable to Plaintiffs Trustees of the Bricklayers & Trowel Trades International Pension Fund, and Trustees of the International Masonry Institute (the "International Benefit Funds") for interest at an annual rate of 15%. (*Id.*) Gibraltar would also be liable to all funds for liquidated damages in the amount of 20% of the amount of unpaid contributions, and for all attorneys' fees and costs the funds incurred in a suit to recover contributions owed. (*Id.* ¶ 12).

---

[2] The Court notes that the text of the Agreement submitted by Plaintiffs prescribes an effective period dating from June 3, 2013 to June 2, 2017, (Dkt. No. 12-1 at 38), while the period at issue here is February through April 2018, (Compl. ¶¶ 13-14, 20). However, because upon default the Court accepts all well-pleaded factual allegations, see *infra*, and Plaintiffs allege that the relevant period was covered by the Agreement (Compl. ¶ 8), I infer that the parties extended the effective period by further agreement.

Plaintiffs allege that Gibraltar employees performed covered work in the period from February 2018 through April 2018 but failed to contribute to the funds in connection with this work. (*Id.* ¶¶ 13, 20). Gibraltar thus owed $527,314.90 in delinquent contributions, not including interest, liquidated damages, fees or costs. (*Id.*). However, since Plaintiffs commenced this action, Defendant has contributed $101,841.10, thereby reducing the principal allegedly owed to $425,473.80. (Dkt. No. 13 ("Pls.' Mem.") at 3).

Plaintiffs seek to recover the remaining principal, as well as interest, liquidated damages, fees, and costs, as prescribed by the Agreement. (*Id.* at 5).

## ANALYSIS

### A. *Standard of Review*

Rule 55 of the Federal Rules of Civil Procedure calls for a two-step process for obtaining a default judgment. *See Priestly v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, the plaintiff must request entry of default by the Clerk of the Court. *Id.* (citing Fed. R. Civ. P. 55(a)). Once default has been entered against the non-responsive party or parties, the plaintiff "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

By defaulting, a party is deemed to have admitted all well-pleaded factual allegations of liability, with the notable exception of those relating to damages. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). With the facts thus established, the court, drawing all reasonable inferences in the moving party's favor, must decide whether the moving party has made out a valid cause of action as a matter of law. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

### B. *Discussion*

#### a. *Liability*

Section 515 of ERISA gives the force of federal law to collectively bargained agreements insofar as such agreements require that an employer contribute to a multiemployer plan. 29 U.S.C. § 1145. Section 502, which governs civil enforcement of ERISA, endows Plaintiffs with the right to sue for enforcement of the plan and for other relief. *See* 29 U.S.C. §§ 1132(a)(3)(B)(ii), 1132(d)(1), 1132(g)(2)(E). Here, Plaintiffs have alleged that Gibraltar, an employer, breached a collectively bargained agreement by failing to contribute to a multiemployer plan. These allegations, taken as true, suffice to establish Defendant's liability under ERISA.

#### b. *Damages*

ERISA provides that in an action brought by a fiduciary for or on behalf of a plan to enforce contribution requirements under ERISA, if a court finds in favor of the plaintiff, the court is authorized to award the plan the unpaid contributions; interest thereupon; an amount "equal to the greater of" interest due on the unpaid contributions or liquidated damages provided for under the plan; not to exceed 20%; reasonable attorneys' fees and costs; and other appropriate legal or equitable relief. 29 U.S.C. §§ 1132(g)(2).

Here, Plaintiffs request delinquent contributions in the amount of $425,473.80, representing the original delinquent contribution worth $527,314.90 less the partial payment of $101,841.10. (Dkt. No. 11

¶ 14). Plaintiffs seek liquidated damages in the amount of $85,094.76, representing 20% of the delinquent contribution that remains outstanding. (*Id.*). Plaintiffs seek attorneys' fees in the amount of $2,836.00, and costs in the amount of $470.32. Finally, Plaintiffs seek interest as set forth in the Agreement.

### 1. Delinquent Contributions

Plaintiffs seek recovery of $425,473.80 in unpaid contributions. This figure is based on the remittance reports Gibraltar submitted to the Funds from February through April of 2018, which Plaintiffs submit in support of their request for relief. (Dkt. No. 12 ("Hill Decl.") ¶¶ 14-15; Dkt. No. 12-4). I therefore respectfully recommend that Plaintiffs be awarded $425,473.80 in unpaid contributions.

### 2. Liquidated Damages

Under ERISA, Plaintiffs are entitled to liquidated damages. 29 U.S.C. § 1132(g)(2)(C). There are two ways to calculate liquidated damages: to match interest on the unpaid contributions, or to follow the formula established in the Agreement. *Id.* Courts must use whichever yields a higher award, though the latter method may not exceed 20 percent of the unpaid contributions. *Id.* Here, the Agreement provides for liquidated damages of 20 percent of the unpaid contributions owed.[3] (Dkt. No. 12-1 ("CBA") at Art. IX, §3(L)). Thus, I respectfully recommend that Plaintiffs be awarded $105,462.98 in liquidated damages.

### 3. Attorneys' Fees

Before awarding attorneys' fees, the court must determine whether the requested fees are reasonable. *See, e.g.*, *Trs. of Local 7 Tile Indus. Welfare Fund v. City Tile, Inc.*, No. 10-CV-322 (SJ) (ALC) 2011 WL 7041411, at *3 (E.D.N.Y. Dec. 7, 2011). To make this determination, courts will consider factors including "the time and labor required, the complexity of the case, awards in similar cases and the experience and reputation of the attorneys." *Id.* "The district court retains discretion to determine . . . what constitutes a reasonable fee." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 758 (2d Cir. 1998)) (internal quotations omitted).

The Second Circuit uses the "forum rule," which requires a district court to calculate a "presumptively reasonable fee." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany and Albany County Bd. Of Elections*, 522 F.3d 182, 190 (2d Cir. 2008). This fee is calculated based in part on the "prevailing hourly rate" in the district in which the court sits. *Id.* The prevailing hourly rate must be identified with an eye to the nature of the matter, as well as the attorney's skill, experience, and reputation. *Gesualdi v. Ava Shypula Testing & Inspection, Inc.*, No. 13-CV-1873 (DRH) (GRB), 2014 WL 1399417, at *7 (E.D.N.Y. Apr. 10, 2014).

Courts in this district have found that the prevailing hourly rate for associate attorneys in ERISA actions ranges from approximately $200 to $275. *See Finkel v.*

---

[3] Plaintiffs request 20 percent of the amount currently due, rather than 20 percent of the contributions which were outstanding when Plaintiffs initiated this action.

*Fred Todino & Sons, Inc.*, No. 08-CV-4598 (SJF) (WDW), 2010 WL 4646493, at *6 (E.D.N.Y. Oct. 8, 2010), *report and recommendation adopted*, 2010 WL 4673961 (E.D.N.Y. Nov. 3, 2010) (approving a rate of $275 per hour for associate time and collecting cases); Finkel v. Architcraft Inc., No. 08-CV-4597(NGG)(JMA), 2010 WL 1257773, at *4 (E.D.N.Y. Feb. 24, 2010), *report and recommendation adopted*, 2010 WL 1212556 (E.D.N.Y. Mar. 26, 2010); *La Barbera v. Les Sub-Surface Plumbing, Inc.*, No. 03-CV-06076 (ENV) (ETB), 2006 WL 3628024, at *8 (E.D.N.Y. Dec. 11, 2006) ("Courts in this district have found [hourly billing rates similar to $250] to be reasonable, with recent rates varying between $200 and $275"). Some courts have differentiated between junior and senior associates, holding that the prevailing rates are $100-$200 for the former and $200-$300 for the latter. *See Leser v. U.S. Bank Nat. Ass'n*, No. 09-CV-2362 KAM MDG, 2013 WL 1952306, at *8 (E.D.N.Y. May 10, 2013) (collecting cases). I find that this bright line obscures relevant factors such as specialized experience.

Importantly, legal precedent alone is not an adequate basis for assessing the prevailing rate. As time goes on, inflation causes wages and billing rates to rise, yet the courts often fail to make commensurate adjustments. *See Duke v. Cty. of Nassau*, No. 97-CV-1495 (JS), 2003 WL 23315463, at *2 (E.D.N.Y. Apr. 14, 2003) (applying hourly rates above the average range because the prevailing rates, as determined by courts, were "outdated"). Indeed, the $200-$275 range for associates dates back well over a decade. *See, e.g., La Berbera*, 2006 WL 3628024, at *8 (collecting opinions from 2005 and 2006 to support a finding that this range reflected the prevailing rate).

Nicole Marimon is a 2014 graduate of Fordham University School of Law and an associate at Virginia & Ambinder, LLP. Her time was billed at an hourly rate of $265. (Marimon Decl. ¶ 9). At least one court in this district has found that, with respect to Ms. Marimon, $265 is an unreasonably high rate. *Trustees of Local 7 Tile Indus. Welfare Fund v. Larsen Marble & Tile, LLC*, No. 18-CV-1025 (ARR) (SMG), 2018 WL 6363923, at *6 (E.D.N.Y. Nov. 19, 2018), *report and recommendation adopted as modified*, 2018 WL 6344188 (E.D.N.Y. Dec. 5, 2018). I disagree. Though $265 per hour approaches the higher end of the prevailing rate scale for associate attorneys, it is within the established range. Ms. Marimon has regularly represented multiemployer employee benefit plans in ERISA litigation since her admission to the bar. (Marimon Decl. ¶ 9). In a case much like this one, where Ms. Marimon had co-counsel, a court in this district found reasonable her hourly rate of $250. *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, Skill Improvement & Safety Funds v. NUS Constracting, Inc.*, No. 17-CV-5037 (RID) (CLP), 2018 WL 4328829, at *6 (E.D.N.Y. Sept. 11, 2018). Here, she is the sole attorney representing Plaintiffs.

I find that $265 per hour is reasonable given Ms. Marimon's experience, her principal role in this matter, and the effects of inflation on the prevailing rate. *See Gesualdi v. Ava Shypula Testing & Inspection, Inc.*, No. 13-CV-1873 (DRH) (GRB), 2014 WL 1399417, at *8 (E.D.N.Y. Apr. 10, 2014) ("After reviewing the credentials and experience that plaintiffs' counsel possess, and after comparing the hourly rates in the instant case with the hourly rates approximately eight years ago . . . the Court believes that . . . the hourly rates appear to be

reasonable and within the community's prevailing rates.").

Two unnamed legal assistants also participated in this matter, billing at an hourly rate of $115. (Dkt. No. 11-4 at 3). The Court finds this rate reasonable. *See Gesualdi v. Mech. Insulation Inc.*, No. 14-CV-0724 (JS) (SIL), 2015 WL 729728, at *12 (E.D.N.Y. Feb. 18, 2015) (holding that $110 is a reasonable hourly rate for paralegal work).

Having reviewed the detailed contemporaneous time records Ms. Marimon submitted, I further find that 12.4 hours (9.4 billed by Ms. Marion and three billed by the legal assistants) was a reasonable expenditure of time. Thus, I respectfully recommend that Plaintiffs be awarded $2,836.00 in attorneys' fees.

4. Costs

Plaintiffs seek to recover $400 in filing fees and $70.32 in service fees pursuant to 29 U.S.C. Section 1132(g)(2)(D). (Dkt. No. 11 ("Marimon Decl.") ¶ 11; Dkt. No. 11-4 at 3). Filing and service fees are properly classified as reimbursable costs. *King v. STL Consulting, LLC*, No. No. 05-CV-2719 (SJ) (KAM), 2006 EL 3335115, at *8 (E.D.N.Y. Oct. 3, 2006) (citing 28 U.S.C. § 1920). Moreover, the amounts Plaintiffs request are reasonable and satisfactorily documented. *See Trs. of Local 7 Tile Indus. Welfare Fund v. Caesar Max Tile Corp.*, No. 13-CV-924 (RRM) (VMS), 2014 WL 991723, at *11 (E.D.N.Y. Mar. 13, 2014); Dkt. No. 11-4 at 3. Thus, I respectfully recommend that Plaintiffs be awarded $470.32 in costs.

5. Interest

  i.  Pre-Judgment Interest

The Agreement and associated Collection Policy provide that interest shall accrue from the due date. (CBA at Art. IX, §3(L); Dkt. No. 12-3 ("Collection Policy") at Art. II (5)). Under these contracts, "[c]ontributions from Association members are due by the 15th of the month following the month in which the work was performed," while "[c]ontributions from the Independent Employers are due biweekly commencing on the 1st and 15th of each month." (CBA at Art. IX, §3(L); Collection Policy at Art. II (1)). Gibraltar appears to have signed the Agreement as an independent employer. (Dkt. No. 12-1 at 42). However, Plaintiffs' submissions indicate that its contributions were due by the 15th of the month following the month in which the work was performed. (Dkt. No. 12-5). Because this inures to Defendant's benefit, and because "a default judgment must not . . . exceed in amount[] what is demanded in the pleadings," I will treat the due date as the 15th of the month following the month in which the work was completed. Fed. R. Civ. P. 54(c).

New York law allows for the calculation of prejudgment interest on damages incurred over time "from a single reasonable intermediate date." *Larsen Marble & Tile, LLC*, 2018 WL 6363923, at *4 (internal citations omitted). In this instance, however, I believe it is more appropriate to calculate the true amount of interest due, because the set of due dates is limited and the amount due each month varies significantly. Accordingly, I recommend several per diem interest rates, each to accrue from a given date.[4]

---

[4] Although Plaintiffs submit supportive documentation titled "Gibraltar Compounded Interest by Month," the Agreement does not state that interest is to be compounded. Accordingly, I respectfully recommend awarding only simple interest. *See Larsen Marble & Tile, LLC*, 2018 WL 6363923,

Defendant made a partial payment of $101,841.10 on July 23, 2018. (Hill Decl. ¶ 15). The Court thus treats a portion of the February contributions in that amount as having been paid on July 23, with interest accruing from March 16, 2018, to July 22, 2018 (129 days). At a rate of 10% per annum, this interest accrues at a daily rate of $27.90. At a rate of 15% per annum, this interest accrues at a daily rate of $41.85. Thus, the Local 7 Benefit Funds are entitled to interest on this sum amounting to $3,599.10, and the International Benefit Funds are entitled to interest on the same amounting to $5,398.97.

The February contributions were worth $241,097.75 in total. (*See* Dkt. No. 12-5). The remainder of the February contributions, on which interest has continued to accrue from March 16, 2018, is $139,256.65. At a rate of 10% per annum, this interest accrues at a daily rate of $38.15. At a rate of 15% per annum, this interest accrues at a daily rate of $57.23.

The March contributions, on which interest began to accrue on April 16, 2018, total $236,657.67. At a rate of 10% per annum, this interest accrues at a daily rate of $64.84. At a rate of 15% per annum, this interest accrues at a daily rate of $97.25.

The April contributions, on which interest began to accrue on May 16, 2018, total $49,559.48. At a rate of 10% per annum, this interest accrues at a daily rate of $13.58. At a rate of 15% per annum, this interest accrues at a daily rate of $20.36.

Thus, I respectfully recommend that Plaintiffs be awarded pre-judgment interest as follows. To the Local 7 Benefit Funds, I recommend awarding $3,599.10 in interest on the partial contribution due in March but made in July; $38.15 per day from March 16, 2018, to the date of judgment; $64.84 per day from April 16, 2018, to the date of judgment; and $13.58 per day from May 16, 2018, to the date of judgment. To the International Benefit Funds, I recommend awarding $5,398.97 in interest on the partial contribution made in July; $57.23 per day from March 16, 2018, to the date of judgment; $97.25 per day from April 16, 2018, to the date of judgment; and $20.36 per day from May 16, 2018, to the date of judgment.

ii.   Post-Judgment Interest

Plaintiffs are further entitled to post-judgment interest, to be calculated from the date of entry of the judgment at a rate equal to the weekly average one-year constant maturity Treasury yield (as published by the Board of Governors of the Federal Reserve system for the calendar week preceding the date of judgment). 28 U.S.C. § 1961.

### CONCLUSION

For the foregoing reasons, I respectfully recommend that Plaintiffs' motion for default judgment be granted and judgment entered in the amount of $513,874.88 (representing the delinquent contributions, liquidated damages, attorneys' fees, and costs), plus pre- and post-judgment interest to be calculated according to the date of judgment. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Roslynn R. Mauskopf within fourteen days of receiving this Report and Recommendation. Failure to file timely

---

at *4 (New York law, which federal courts routinely apply in calculating interest in ERISA cases, presumes that interest is simple unless the underlying contract states otherwise). Thus, I respectfully recommend awarding only simple interest.

objections may waive the right to appeal this District Court's Order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

SO ORDERED.

*Ramon E. Reyes, Jr.*
RAMON E. REYES, JR.
United States Magistrate Judge

Dated:  December 20, 2018
        Brooklyn, NY