# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

№ 18-cv-3042 (RRM) (RER)

TRUSTEES OF THE LOCAL 7 TILE INDUSTRY WELFARE FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY ANNUITY FUND, TRUSTEES OF THE TILE LAYERS LOCAL UNION 52 PENSION FUND, TRUSTEES OF THE BRICKLAYERS & TROWEL TRADES INTERNATIONAL PENSION FUND, AND TRUSTEES OF THE INTERNATIONAL MASONRY INSTITUTE,

Plaintiffs,

VERSUS

GIBRALTAR CONTRACTING, INC.,

Defendant.

**REPORT & RECOMMENDATION**

**October 23, 2020**

**To the Honorable Roslynn R. Mauskopf**
**United States District Judge**

**RAMON E. REYES, JR., U.S.M.J.:**

Trustees of the Local 7 Tile Industry Welfare Fund, Trustees of the Local 7 Tile Industry Annuity Fund, Trustees of the Tile Layers Local Union 52 Pension Fund, Trustees of the Bricklayers & Trowel Trades International Pension Fund, and Trustees of the International Masonry Institute (collectively, "Plaintiffs") commenced this action against Gibraltar Contracting, Inc. ("Defendant" or "Gibraltar"), pursuant to Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1132(a)(3), 1145, and Section 301 of the Labor Management Relations Act of 1947 ("LMRA") § 185. (Dkt. No. 1 ("Compl.") ¶ 1). Defendant failed to answer or otherwise respond, (*See* Dkt. Entry dated 8/6/2018), resulting in an entry of default. (Dkt. No. 9). On September 26, 2019, Your Honor adopted my Report and Recommendation dated December 20, 2018, granted Plaintiffs'

motion for default judgment, and awarded Plaintiffs $513,874.88 in delinquent contributions, liquidated damages, attorney's fees, and costs, plus pre- and post-judgment interest. (Dkt. No. 18).

On March 11, 2020, Defendant filed a fully briefed motion to vacate default judgment, (Dkt. No. 20 ("Def.'s Mot.")), which Your Honor referred to me, (Dkt. Entry dated 3/11/2020). For the reasons set forth below, I respectfully recommend that the Defendant's motion to vacate the default judgment be denied.

## **FACTUAL AND PROCEDURAL HISTORY**

This Court assumes familiarity with the underlying facts of the case. In short, the dispute arises out of a collective bargaining agreement ("CBA") that Defendant signed as an Independent Employer with Local Union No. 7 of the Tile Setters and Tile Refinishers Union ("Local 7"). (Dkt. No. 20-16 ("Def.'s Mem.") at 1; Dkt. No 15 ("R&R") at 2). Plaintiffs brought this action pursuant to ERISA and LMRA after Defendant failed to make timely fringe benefit fund contributions as required under the CBA. (Def.'s Mem. at 1-2; R&R at 3).

### A. Facts

During the relevant time period, Defendant was a small minority owned business enterprise. (Def.'s Mem. at 1). Defendant signed the CBA in order to perform retiling work for the Brooklyn Battery Tunnel as a subcontractor of Tully Construction Co. Inc ("Tully"). (*Id.*; *see* Dkt. No. 20-17 ("Pls.' Opp'n") at 7-8). As a small business, Gibraltar was concerned about its ability to afford monthly fringe benefit contributions required under the CBA. (Def.'s Mem. at 2). At signing, president of Local 7, William Hill ("Hill"), "assured . . . [president of Gibraltar, Christian Varela ("Varela")] that the CBA's requirement of bi-weekly payment for fund contributions . . . would not be a problem, as the provisions calling for the imposition of interest and liquidated damages for late payments were rarely enforced." (Def.'s Mem. at 2).

Local 7 and Tully subsequently reached an "accommodation" whereby Tully would provide the money for fringe benefit contributions to Gibraltar who would then make payments to Plaintiffs. (Def.'s Mem. at 2-3; *see* Def.'s Mot., Ex. F). Defendant was not party to that discussion but was included on an email chain describing the arrangement. (Dkt. No. 20-1 ("Varela Decl.") ¶ 19; Dkt. No. 20-12). An email dated July 2016 from one of Plaintiffs' representatives to Tully stated that "Local 7 Tile benefits will be pay [sic] by Gibraltar Contacting on a prompt monthly schedule. I will keep you informed of any deficiency if they arise, as you stated that Tully Construction would make sure Local 7 Tile Funds would be made whole." (Def.'s Mot., Ex. F at 6). Tully got behind in making payments to Gibraltar; therefore, Gibraltar was unable to meet the fringe benefit contribution requirement. (Def.'s Mem. at 4). These late payments contributed to financial losses for Gibraltar, and near the end of the tunnel project, Defendant "ceased active business operations." (Varela Decl. ¶ 24).

Varela received calls from Local 7 requesting that he urge Tully to make the outstanding payments. (*Id.*). Tully was not responsive, and Varela advised Local 7 to contact Tully directly. (*Id.*). "Gibraltar assumed that Local 7 . . . would work something out with Tully in order to obtain the payments that were due." (*Id.*). In March 2019, Varela received a copy of an email exchange between a Tully representative and Plaintiff's counsel that contained the outstanding contribution amount and the subject line "Local 7 Tile Industry Funds v. Gibraltar Contracting – Contributions

Owed." (Def.'s Mem. at 21; Def.'s Mot., Ex. H; Varela Decl. ¶¶ 28, 30; *see* Pls.' Opp'n at 7). Tully issued a check to Defendant in the amount specified in that email as the "outstanding amount." (Varela Decl. ¶ 28). Defendant then issued a check to Plaintiffs with the notation "Final Payment BB28 (Brooklyn Battery [Job Number])." (*Id.* ¶ 29; Def.'s Mot., Exs. D at 6, G at 107). The notation "was not challenged or commented upon." (Varela Decl. ¶ 29). Defendant "believed that its obligations had been satisfied," in part because Local 7 never informed Defendant that "this action would be, or had been, commenced." (Def.'s Mem. at 4, 12).

## B. Procedural History

Plaintiff filed the complaint on May 23, 2018. (Dkt. No. 1). Defendant does not dispute that the complaint was properly served by personal service upon the New York Secretary of State ("the Secretary") as its statutory agent. (Def.'s Mem. at 5, 10; *see* Dkt. No. 7). However, Defendant did not appear before this Court or otherwise answer the complaint, (*see* Dkt. Entry dated 8/6/2018); and on August 14, 2018, the Clerk of Court entered default. (Dkt. No. 9). Plaintiffs served Defendant with the Motion for Default Judgment via first class and certified mail through the United States Postal Service ("USPS") on October 3, 2018. (Dkt. No. 14).

This Court subsequently recommended that Plaintiff's motion for default judgment be granted. (R&R at 7). That report and recommendation was served on Defendant via first class and certified mail through the USPS on December 26, 2018. (Dkt. No. 16). Your Honor adopted the report and recommendation on September 26, 2019. (Dkt. No. 18). A copy of the order was mailed to Defendant the next day. (Dkt. Entry dated 9/27/2019). The judgement was subsequently ordered and adjudged, (Dkt. No. 19); and a copy of the judgment was mailed to Defendant on September 30, 2019, (Dkt. Entry dated 9/30/2019). All mailings were sent to the same address that the Secretary had on file. (Def's. Mot., Ex. C-2; Dkt. Nos. 6, 14, 16; Dkt. Entry dated 9/27/2019; Dkt. Entry dated 9/30/2019).

Defendant and its counsel attest that they did not learn of this action until October 3, 2019 when Varela received a copy of the Court's Order Adopting Report and Recommendation. (Def.'s Mem. at 5; Dkt. No. 20-2 ("Janiec Delc.") ¶ 2). Varela "[has] no basis to question that the mailings were made as represented." (Varela Decl. ¶ 11). However, he has been unable to locate the summons and complaint even after discussions with his clerical staff regarding legal mail received and an unidentified signature on the mailing receipt. (Def.'s Mem. at 14-15). Varela is responsible for all legal mailings to Defendant and is not aware of any other instances where he did not receive mail addressed to Gibraltar. (Varela Decl. ¶ 11). "At worst, Gibraltar's inability to receive or locate the served papers could be said to be attributable to negligence in the handling of papers that the sworn affidavits of service and mailing receipt show were delivered to it." (Def.'s Mem. at 10).

Until receipt of the judgment, Gibraltar believed that "all fringe benefit obligations owing to Local 7 had been paid by Tully." (Def.'s Mem. at 5). Upon learning of the judgment, Defendant immediately contacted its counsel and initiated an internal investigation to determine the whereabouts of the summons and complaint. (Dkt. No. 20-18 ("Def.'s Reply") at 3-4; Varela Decl. ¶¶ 5, 7). Defendant's counsel contacted Plaintiff's attorney on October 9, 2019 to clarify the outstanding principle balance and request that "the action against Gibraltar be discontinued." (Def.'s Mot., Ex. D at 1-2). More than three months later, on January 30,

2020, Defendant provided its motion to vacate to Plaintiffs. (Pls.' Opp'n at 13; Def.'s Mot. at 2).

## DISCUSSION

Pursuant to Rules 55(c) and 60(b) of the Federal Rules of Civil Procedure, the Court may set aside a default judgment for "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . . ; (3) fraud . . . misrepresentation, or misconduct by an opposing party . . . ; (4) the judgment is void . . . ; or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1); *see* Fed. R. Civ. P. 55(c). Setting aside a default judgment rests on the court's sound discretion, bearing in mind the strong preference to resolve disputes on their merits. *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). Thus, "in ruling on a motion to vacate a default judgment, all doubts must be resolved in favor of the party seeking relief from the judgment." *Id*. However, "[b]ecause Rule 60(b) allows extraordinary relief, it should be invoked only if the moving party meets its burden of demonstrating 'exceptional circumstances.'" *King v. Galluzzo Equip. & Excavating Inc.*, 223 F.R.D. 94, 97 (E.D.N.Y. 2004) (quoting *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1142 (2d Cir.1994)).

Defendant argues that the Court should use its discretion to vacate the default judgment under either Rule 60(b)(1) or 60(b)(6)[1] because Defendant was unaware of the lawsuit, it has several meritorious defenses to the Plaintiffs' claims that warrant reopening the case, and Plaintiffs would not be prejudiced by a vacatur of the default judgment. (Def.'s Mem. at 9, 25). After careful review of the parties' submissions, I respectfully recommend that Defendant's motion to vacate the default judgment be denied.

### A.  Rule 60(b)(6)

Rule 60(b)(6) provides that the Court may set aside a default judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). The Second Circuit has referred this subsection as a "catchall provision" that "is properly invoked only when there are extraordinary circumstances justifying relief, when the judgment may work an extreme and undue hardship, and when the asserted grounds for relief are not recognized in clauses (1)-(5) of the Rule." *Trustees of Local 531 Pension Fund v. Am. Indus. Gases, Inc.*, 708 F. Supp. 2d 272, 274 (E.D.N.Y. 2010) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir.1986)). As such, "[a] defendant is not entitled to relief pursuant to Rule 60(b)(6) unless no other provision of Rule 60(b) . . . applies." *G&G Closed Circuit Events, LLC v. Gonzalez*, No. 14-CV-5334 (RRM) (SMG), 2019 WL 4917913, at *3 (E.D.N.Y. Sept. 30, 2019). In fact, "[t]o justify relief under subsection (6), a party must show 'extraordinary circumstances' suggesting that the party is faultless in the delay. If a party is partly to blame for the delay, relief must be sought . . . under subsection (1) and the party's neglect must be excusable." *Pioneer Investment Services Co v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993) (citations omitted). Thus subsections (b)(1) and (6) are mutually exclusive.[2] *Stevens v.*

---

[1] Throughout its filings, Defendant emphasizes that Plaintiffs failed to inform the Court of payments that Defendant made during the litigation. (Def.'s Mem. at 6-7; Def.'s Reply at 9-10). But Defendant does not argue that Plaintiffs made misrepresentations to the Court or purport to bring an argument under Rule 60(b)(3), and the Court does not construe those statements as such.

[2] The Court notes that claims of attorney negligence or misadvice may be properly analyzed under both subsections (b)(1) and (b)(6). *Silver v. Dalessandro*, No. 15CV3462ARRST, 2019 WL 5902645, at *5 (E.D.N.Y. Oct. 28, 2019), *R&R adopted sub nom. by Silver v. Salessandro*, 2019 WL 5895469 (Nov. 12, 2019), *adhered to*, 2019 WL 6173398 (Nov. 20, 2019).

*Schneiderman*, No. 05 Civ. 10819 (LAK), 2011 WL 6780583, at *4 (S.D.N.Y. Dec. 23, 2011), *aff'd sub nom. Stevens v. Miller*, 676 F.3d 62 (2d Cir. 2012) (citing *United States v. Cirami*, 535 F.2d 736, 740 (2d Cir.1967); *United States v. Erdoss*, 440 F.2d 1221, 1223 (2d Cir.1971)).

Although not explicitly characterized as such, the Court assumes that Defendant views the extraordinary circumstance that would support a claim under subsection (6) as follows. Defendant was a subcontractor of Tully working on a tunnel retiling project. (Def.'s Mem. at 1). Around the time that Defendant signed the CBA with Local 7, Tully and Local 7 made an arrangement that Tully would make payments to Gibraltar equal to the amount Gibraltar owed to Local 7 for fringe benefit contributions. (*Id.* at 2-3). Tully grew behind in making those payments. (*Id.* at 4, 14). At Defendant's urging, Local 7 communicated directly with Tully to obtain overdue fringe benefit contributions. (Varela Decl. ¶ 24; Def.'s Mem. at 14). Thus, "Gibraltar assumed that Local 7 . . . would work something out with Tully in order to obtain the payments that were due." (Varela Decl. ¶ 24). Defendant avers that knowledge of the litigation would have changed its approach to Tully once it grew behind in making payments. (Def.'s Mem. at 14). But Defendant did not receive the summons and complaint which should have alerted it to the litigation. (*Id.* at 14-15).

At its essence, Defendant's argument under Rule 60(b)(6) is grounded in Defendant's admitted negligence in handling mail and its assumptions regarding communications with Local 7 and Tully. I find that Defendant failed to establish extraordinary circumstances suggesting that it is faultless in the delay. I therefore find that Defendant's motion is appropriately reviewed only under Rule 60(b)(1). *See Cirami*, 535 F.2d at 740 (finding that where the alleged ground for relief was mistake, only Rule 60(b)(1) was applicable).

### B.  Rule 60(b)(1)

Defendant argues that its conduct is excusable neglect under Rule 60(b)(1). (Def.'s Mem. at 10).

The Second Circuit applies two different tests to analyze excusable neglect. First, this Circuit adopted the Supreme Court's *Pioneer* factors. *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003). The factors include: "(1) the danger of prejudice to the non-movant, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith." *Id.* Emphasis is on the third factor. *Padilla v. Maersk Line, Ltd.*, 721 F.3d 77, 83 (2d Cir. 2013).

This Circuit also applies a less stringent test to Rule 60(b) motions. *See Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 59 (2d Cir. 1996). The relevant factors include: (1) whether the default was willful; (2) whether the defendants have a meritorious defense; and (3) whether vacating the default will prejudice the non-defaulting party. *Id.* While a willful default generally should not be set aside, "[n]o single factor is dispositive." *FedEx TechConnect, Inc. v. OTI, Inc.*, No. 12 Civ. 1674 (RJS), 2013 WL 5405699, at *4 (S.D.N.Y. Sept. 23, 2013) (collecting cases). Because default judgments are generally disfavored, the factors should be construed generously. *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 168 (2d Cir. 2004). But the analysis is more rigorous in the context of a default

---

However, Gibraltar does not contend that its counsel was negligent in handling this matter.

judgment than an entry of default "because the concepts of finality and litigation repose are more deeply implicated." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).

District courts apply the two tests both in tandem and interchangeably without any discernable pattern. *See FedEx TechConnect*, 2013 WL 5405699 at *2, *4 n.5. When a court applies the less stringent Second Circuit test and finds that the movant has not established excusable neglect, it need not address the *Pioneer* factors. *See, e.g.*, *In re Barquet Grp., Inc.*, 486 B.R. 68, 72 n.2 (S.D.N.Y. 2012) (noting that it was unnecessary to consider the *Pioneer* test when Appellants failed to satisfy the less stringent Second Circuit test). This is especially true where the parties did not brief the court on the *Pioneer* factors. *See e.g.*, *In re FairPoint Commc'ns, Inc.*, 462 B.R. 75, 80 n.6 (Bankr. S.D.N.Y. 2012) (applying only the Second Circuit test because the parties' briefing did not include the *Pioneer* factors).

Defendant did not apply the Second Circuit test to its arguments under subsection (b)(1). However, because Defendant's arguments under subsection (b)(6) largely rely on the same basis as its arguments under subsection (b)(1), the Court uses those arguments to inform its analysis. Having assessed Defendant's conduct under the Second Circuit test, I find that the evidence favors denying Defendant's motion to vacate the default judgment. Therefore, there is no need to apply the *Pioneer* factors,[3] and I respectfully recommend that Defendant's motion be denied.

a. Willfulness

Defendant's central reason for its default was that it was unaware of the litigation, and therefore could not have answered or otherwise responded to the complaint. (Def.'s Mem. at 12). After careful review, I find that Defendant did not sufficiently explain its continued lack of awareness of the litigation or its delay in appearing before this Court once it became aware of the judgment.

Because the central purpose of a default judgment is to protect parties and the courts from harassment and purposeful delay, *see Green*, 420 F.3d at 108, willfulness must involve more than carelessness or negligence by the defaulting party. *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). A default is willful if the court determines that the defendant defaulted deliberately, even if not in bad faith. *Guardian Life Ins. Co. of Am. v. Premier Wealth Grp.*, LLC, No. 12 Civ. 9099 (AJN), 2017 WL 1040425, at *3 (S.D.N.Y. Mar. 16, 2017) (quoting *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const.*, LLC, 779 F.3d 182, 187 (2d Cir. 2015)). "Imprudent, inattentive, careless, or even

---

[3] Defendant's purported reason for its delay – the most important of the *Pioneer* factors – was that it was unaware of the litigation. (Dkt. No. 20-16 at 12). Defendant points to its own belief "that its obligations . . . had been satisfied" and Plaintiffs' failure to mention the litigation during discussions of overdue fringe benefit contributions. (*Id.*). Defendant characterizes its failure to respond to or otherwise appear in the litigation as "failure to comply with a filing deadline" and asserts that missing a filing deadline constitutes excusable neglect. (*Id.* at 11). This assertion is unsupported where, as here, the relevant court rule is unambiguous. *See, e.g.*, *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003) (quoting *Canfield*, 127 F.3d at 250–51 (collecting cases)) ("the equities will rarely if ever favor a party who 'fail[s] to follow the clear dictates of a court rule' . . . [where] 'the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test.'"). Moreover, as discussed below, Defendant's admitted repeated negligence in handling legal mail and unexplained delay before filing this motion is not excusable neglect. *See In re Enron Corp.*, 419 F.3d 115, 123 (2d Cir. 2005) ("[F]ault in the delay remains a very important factor—perhaps the most important single factor—in determining whether neglect is excusable.") (collecting cases).

negligent handling of a case, although not to be condoned, does not demonstrate willfulness." *Gravatt v. City of New York*, No. 97 Civ. 0354 (RWS), 1997 WL 419955, at *3 (S.D.N.Y. July 28, 1997) (quotation omitted). Similarly, gross negligence may weigh against the defaulting party, but it does not necessarily preclude relief. *Am. All.*, 92 F.3d at 61.

Default may be willful if the conduct of the defaulting party was egregious and not adequately explained. *McNulty*, 137 F.3d at 738 (citing *Am. All.*, 92 F.3d at 61). "In general, a defendant's failure to answer the complaint and respond to a motion for default judgment demonstrates willfulness." *Lopez v. Mohammed*, No. 14-CV-4443 (PKC) (MDG), 2017 WL 4277154, at *9 (E.D.N.Y. Sept. 26, 2017) (quoting *Murphy v. Snyder*, No. 10-CV-1513, 2013 WL 934603, at *6 (E.D.N.Y. Mar. 8, 2013) (adopting R&R in part). But "courts most often find defaults not to be willful where the defaulting parties did not have actual notice of the litigation." *Walden v. Lorcom Techs., Inc.*, No. 05-CV-3600 (ARR) (RER), 2007 U.S. Dist. LEXIS 101365, at *8 (E.D.N.Y. Jan. 31, 2007), *R&R adopted by* 2007 U.S. Dist. LEXIS 101364 (Feb. 23, 2007).

Plaintiffs did not submit evidence that "Defendant intentionally avoided notice or has strategically refused to answer the complaint." *Nikolaeva v. Home Attendant Servs. of Hyde Park*, No. 15-CV-6977 (NGG) (RER), 2018 WL 6984837, at *2 (E.D.N.Y. Nov. 16, 2018), *R&R adopted by* 2019 WL 147721 (Jan. 9, 2019). However, Defendant has not satisfactorily explained why it remained unaware of the litigation despite service of additional filings. *See Gonzaga Cortez v. Hang Lin*, No. 19 Civ. 0905 (LGS), 2019 WL 4256363, at *4 (S.D.N.Y. Sept. 9, 2019) (finding that a lack of satisfactory explanation as to four different mailings indicated that the default was deliberate). The record supports that all filings were properly served and mailed to the appropriate address. (Def.'s Mem. at 5, 10; Dkt. Nos. 7, 14, 16; Dkt. Entry dated 9/27/2019; Dkt. Entry dated 9/30/2019). To Varela's knowledge, the mailings associated with this case are the only instances of mail sent Gibraltar that he did not receive. (Varela Decl. ¶ 11).

The Court appreciates Defendant's candor in admitting negligence in the handling of the summons and complaint and finds no other satisfactory explanation for why documents properly served did not come to Defendant's attention. The Court agrees with Defendant that the handling of the complaint alone does not necessarily establish willfulness. (*See* Def.'s Reply at 6). However, Defendant fails to adequately address the subsequent mailings, each sent on a different date, other than Varela's concern that he did not receive them. (*Id.*). This failure alone is sufficient to find that Defendant's default was deliberate. *See Mason Tenders Dist. Council of Greater New York v. WTC Contracting, Inc.*, No. 10 Civ. 0700 (DLC), 2011 WL 4348152, at *3 (S.D.N.Y. Sept. 16, 2011) ("One failure by the United States Postal Service might be believable, but three failures—especially when one is contradicted by evidence supplied by the Secretary—are beyond credible.")

Even if the Court accepted that Defendant never received a single mailing in and remained unaware of this litigation, (Def.'s Mem. at 5; Janiec Delc. ¶ 2), Defendant delayed for more than three months before pursuing vacatur, (Pls.' Opp'n at 13; Def.'s Mot. at 2). This resulted in a five-month delay before appearing before this Court and supports a finding of willfulness.

Timeliness informs the court's understanding of whether the default was willful. *Lopez*, 2017 WL 4277154, at *10 (finding that a two month delay after filing a

notice of appeal supported that default was willful); *Gonzaga Cortez v. Hang Lin*, No. 19 Civ. 0905 (LGS), 2019 WL 4256363, at *4 (S.D.N.Y. Sept. 9, 2019) (finding that Defendant's six week delay after counsel filed an appearance compounded its neglect and supported the court's willfulness finding). Courts in this Circuit find neglect excusable "where defendants moved *promptly* to vacate upon notice of the judgment." *King v. Mastronardi Mason Materials, Inc.*, No. 98-CV-7389 (EHN), 1999 WL 294738, at *2 (E.D.N.Y. Mar. 22, 1999) (emphasis added).

An application under Rule 60(b)(1) "shall be made within a reasonable time . . . not more than one year after the judgment . . . was entered or taken." *Sasso v. M. Fine Lumber Co., Inc.*, 144 F.R.D. 185, 188 (E.D.N.Y.1992); *see* Fed. R. Civ. P. 60(c)(1). Although the rule permits the court's review up to one year after judgment, this does not justify a one-year delay in all cases. 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2866 (3d ed.) (citing *Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation*, 605 F.2d 648, 656 (2d Cir. 1979)). The moving party must provide a reasonable explanation for its delay given the particulars of the case. *La Barbera v. Whitney Trucking, Inc.*, 245 F.R.D. 142, 145 (S.D.N.Y. 2007). "Proper application of the rule strikes a balance between serving the ends of justice and preserving the finality of judgments." *Galluzzo Equip.*, 223 F.R.D. at 97 (citing *Sasso*, 144 F.R.D. at 188). It is the Defendant's burden to prove the reasonableness of its dely. *See Amoco Overseas Oil*, 605 F.2d at 656 ("as the delay in making the motion approaches one year there should be a corresponding increase in the burden that must be carried to show that the delay was 'reasonable.'").

Defendant first learned of the judgment on October 3, 2019. (Def.'s Mem. at 9). Defendant filed its fully briefed motion to vacate on March 11, 2020—more than five months later. (Dkt. No. 20). Upon learning of the lawsuit, Defendant immediately contacted its counsel and initiated an internal investigation to determine the whereabouts of the summons and complaint. (Dkt. No. 20-18 at 3-4; Dkt. No. 20-1 ¶ 4). Defendant's counsel contacted Plaintiff's attorney on October 9, 2019 to clarify the outstanding principle balance and request that "the action against Gibraltar be discontinued." (Dkt. No. 20-10 at 1-2). More than three months later, Defendant provided its motion to vacate to Plaintiffs' counsel on January 30, 2019. (Def.'s Mot. at 2; *see* Pls.' Opp'n at 13).

Defendant submits limited factual and legal support for the reasonableness of its delay. Defendant asserts that "it took a reasonable length of time . . . to obtain the records with respect to the service of summons and complaint, gather and obtain the necessary banking records and review its correspondence." (Def.'s Reply at 6). Defendant does not include any additional details about the time necessary to obtain the records. The Court notes that Defendant had ceased business operations and relevant documents were in storage. (Varela Decl. ¶ 24). However, that alone does not adequately explain the reasonableness of Defendant's delay.

I find that Defendant's unexplained delay and repeated failure to receive mail associated with this case weigh in favor of denying the motion to vacate default judgement.

b. A Meritorious Defense

To establish a meritorious defense, "the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute

a complete defense." *State St. Bank*, 374 F.3d at 167 (quoting *McNulty*, 137 F.3d at 740). This low threshold still requires that a defendant "articulate a defense with a degree of specificity which directly relates that defense to the allegations set forth in the plaintiff's pleadings and raises a serious question as to the validity of those allegations." *Durso v. Modern Food Ctr., Inc.*, No. 17 Civ. 7324 (LAK) (GWG), 2019 WL 2150424, at *9 (S.D.N.Y. May 17, 2019) (quoting *FedEx TechConnect*, 2013 WL 5405699, at *8). The moving party must offer more than "conclusory denials." *Addison v. Reitman Blacktop, Inc.*, 272 F.R.D. 72, 81 (E.D.N.Y. 2010).

Defendant asserts that it has three meritorious defenses to Plaintiffs' claims – waiver, accord and satisfaction, and estoppel. (Def.'s Mem. at 15). In ERISA actions, "courts have recognized that affirmative defenses like [waiver and accord and satisfaction], which focus on the actions of the Funds as opposed to the formation and enforcement of the CBA, may not be foreclosed under section 515." *Trustees of Local 813 Ins. Tr. Fund v. Wilner's Livery Serv., Inc.*, No. 11-CV-3180 (DLI) (CLP), 2012 WL 4327070, at *6 (E.D.N.Y. Sept. 19, 2012) (collecting cases). After careful review of Defendant's submissions, I find that none of the defenses raise a serious question as to the validity of Plaintiffs' allegations.

i. Waiver

The Second Circuit defines waiver as "a litigant's intentional relinquishment of a known right" or contractual protection *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61 (2d Cir. 1999) (comparing "waiver" or "forfeiture"). Waiver must be knowing and voluntary. *Krackow v. Dr. Jack Kern Profit Sharing Plan*, No. 00-CV-2550 (NG) (RLM), 2002 WL 31409362, at *7 (E.D.N.Y. May 29, 2002) (quoting *Smart v. Gillette Co. Long-Term Disability Plan*, 70 F.3d 173, 182 (1st Cir. 1995)). "Waiver may be established by affirmative conduct or by failure to act so as to evince an intent to abandon the right." *Trustees of New York City Dist. Council of Carpenters Pension Fund v. Halcyon Constr. Corp.*, No. 15 Civ. 1191 (PGG), 2017 WL 5643603, at *9 (S.D.N.Y. Mar. 31, 2017) (quotation omitted).

"[A] party's reluctance to terminate a contract upon a breach and its attempts to encourage the breaching party to adhere to its obligations under the contract do not necessarily constitute a waiver of the innocent party's rights in the future." 13 Williston on Contracts § 39:35 (4th ed.) (citing *S. D. Hicks & Son Co. v. J. T. Baker Chemical Co.*, 307 F.2d 750 (2d Cir. 1962)). And while the existence of a no-waiver provision does not preclude a finding that the party waived its contractual rights, where an agreement contains a "no waiver" provision, "a party's failure to insist upon strict compliance is not considered a waiver of his right to demand exact compliance." *Subaru Distrib. Corp. v. Subaru of Am., Inc.*, No. 98 Civ. 5566 (CM), 2002 WL 413808, at *16 (S.D.N.Y. Mar. 18, 2002) (collecting cases).

Plaintiffs seek interest under section 1132(g)(2) of ERISA. (Compl. ¶ 21). "The public policy of this legislation to foster the preservation of the private multiemployer plan system mandates that provision be made to discourage delinquencies and simplify delinquency collection." *Iron Workers Dist. Council of W. New York & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1506 (2d Cir. 1995). Consistent with that public policy and decisions of the Fifth, Seventh, Eighth, and Ninth Circuits, the Second Circuit has reasoned that "an award of interest or liquidated damages should logically be predicated upon the amount of the unpaid contributions originally at issue, whether or not outstanding at the time of

judgment, since that amount correctly measures the damage caused by the delinquency." *Iron Workers*, 68 F.3d at 1507. The majority view in this Circuit is that a party cannot recover damages based on contributions paid in full before the commencement of litigation. *Bd. of Trustees of The United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 W.B.P. & A. Funds v. Akro Gen. Contracting, Inc.*, No. 15-CV-04901 (CBA) (VMS), 2016 WL 6775467, at *5-6 (E.D.N.Y. Aug. 15, 2016), R&R *adopted by* 2016 WL 6779487 (Nov. 15, 2016) (collecting cases).

The parties' CBA contains a provision which states that "[t]he Funds' receipt or acceptance of late payment of contributions . . . shall not constitute a waiver of interest by the Funds, and the Union and the Funds reserve the right to seek interest on the late payment of contributions received." (Def.s Mot., Ex. E, Art. IX, §3 (L)). Defendant concludes that the existence of such a provision is not "an impediment to finding that a waiver took place," (Def.'s Mem. at 19), but provides no factual or legal support for why that provision should be overlooked here. Defendant argues that Plaintiffs implicitly acknowledged that they waived interest payments because through this litigation they "sought interest only for the months of February, March and April 2018, and not for the many months of late payments that preceded the complained of period." (Def.'s Mem. at 18).

Consistent with the prevailing view in the Circuit, Plaintiffs brought suit for the outstanding principal amount and related interest due at the time of filing. There was no clear manifestation of intent by Plaintiff to relinquish its contractual right to liquidated damages and interest on delinquent payments. I find that Defendant's argument does not present evidence of facts that, if proven at trial, would constitute a complete defense.

ii. Accord and Satisfaction

"An accord and satisfaction is an agreement between two parties under which one party accepts a stipulated performance by the other party in discharge of an unresolved obligation by the latter party." *Stahl Mgmt. Corp. v. Conceptions Unlimited*, 554 F. Supp. 890, 892-93 (S.D.N.Y. 1983) (citing *Rein v. Wagner*, 268 N.Y.S.2d 659, 662, *modified on other grounds*, 269 N.Y.S.2d 578, (1965), *aff'd*, 18 N.Y.2d 989 (1966)). "To establish an accord and satisfaction, [there] must [be] an intention to discharge the old obligation when the new one has been performed." *Id.* The party asserting the defense bears the burden of proof. *Clarke v. Max Advisors, LLC*, 235 F. Supp. 2d 130, 144 (N.D.N.Y. 2002) (citing *Env't Prods. & Servs. Inc. v. Consolidated Rail Corp.*, 728 N.Y.S.2d 256, 258 (N.Y. App. Div. 2001)). *"*If there are conflicting versions of what constitutes the agreement, no accord and satisfaction exists." *Id.*

Defendant argues that Plaintiffs' email exchange with Tully to obtain the outstanding principle balance of fringe benefit contributions discharged Gibraltar's obligations under the CBA. (Def.'s Mem. at 19-20). Plaintiffs respond that, while they accepted Tully's payments for the outstanding principle obligations, Defendant remained liable for liquidated damages and interest under the CBA. (Pls.' Opp'n at 18-19). Because of these conflicting versions of what constitutes the agreement, there was no accord and satisfaction.

Specifically, there was no accord. *See First Sec. Mortg. Co. v. Goldmark Plastics Compounds, Inc.*, 862 F. Supp. 918, 935 (E.D.N.Y. 1994) ("an accord is an agreement whereby one party undertakes to give, and the other party to accept in settlement of an

existing claim, something other than what he believes himself to be entitled."). Defendant does not claim, nor can it, that it reached a new agreement with Plaintiffs that would discharge its old obligation. Defendant points to an email exchange between Plaintiffs' counsel and Tully regarding the balance of unpaid fringe benefit contributions. The emails were sent in March 2019 – ten months after Plaintiffs filed the complaint seeking outstanding payments and related interest, (*see* Dkt. No. 1), and more than five months after Plaintiffs served Defendant with their motion for default judgment, (*see* Dkt. No. 14). The emails confirmed the outstanding principal amount owed and directly referenced this litigation in the subject line: "Local 7 Tile Industry Funds v. Gibraltar Contracting – Contributions Owed." (Def.'s Mot., Ex. H; Def.'s Mem. at 21; Varela Decl. ¶¶ 28, 30; *see* Pls.' Opp'n at 7). Tully paid Gibraltar the amount identified in the emails, and Gibraltar in turn paid Local 7 with a check notated as "Final Payment BB28 (Brooklyn Battery [Job Number])." (Varela Decl. ¶ 29; Def.'s Mot., Exs. D at 6, G at 107). These actions were consistent with the existing agreement, did not constitute a new agreement, and therefore could not discharge Defendant's existing obligations under the CBA.

Local 7's communications with Tully did not constitute an accord and satisfaction as to Defendant's obligations under the CBA. The Court will not read Plaintiffs' silence as to the notation on the check as intent to discharge Defendant's obligation, especially where no new obligation was performed and the email exchange directly referenced this ongoing litigation. I find that accord and satisfaction is not a meritorious defense to Plaintiff's claims.

### iii. Equitable Estoppel

"Principles of estoppel can apply in ERISA cases under extraordinary circumstances." *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 85 (2d Cir. 2001) (quoting *Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 78 (2d. Cir. 1996)). In addition to proving extraordinary circumstances, the defendant must prove (1) material misrepresentation, (2) reliance on that misrepresentation, and (3) damage resulting from the reliance. *James v. New York City Dist. Council of Carpenters' Benefits Funds*, 947 F. Supp. 622, 632 (E.D.N.Y. 1996).

Construing doubt in favor of Defendant, it has produced no evidence that Plaintiffs made a misrepresentation that they would forego collection of interest and liquidated damages. Defendant concluded that the "accommodation" of Tully's involvement in the fringe benefit payments discharged Gibraltar's obligations under the CBA and that "Tully, in effect, guaranteed that the payments would be made to Local 7." (Def.'s Mem. at 2-3). Defendant "believed that its obligations had been satisfied," in part because Local 7 representatives never informed Defendant that "this action would be, or had been, commenced." (Def.'s Mem. at 4, 12). But Defendant's "reliance on its own 'belief'" that Plaintiffs discharged its obligations of interest and liquidated damages "by accepting payment of principal amounts undisputedly owed is hardly reasonable." *See Trustees of Laundry, Dry Cleaning Workers & Allied Indus. Health Fund, Workers United v. Oceanside Institutional Indus., Inc.*, No. 16 Civ. 2939 (CS), 2017 WL 4570793, at *4 (S.D.N.Y. Oct. 12, 2017). "Plaintiffs' silence hardly justifies any sort of reliance on Defendant's part," especially where Defendant could have confirmed with Plaintiffs their intent and requested a written waiver. *See id.* Absent extraordinary cases, the Court cannot excuse Defendant from statutory language that entitles Plaintiffs to liquidated damages and interest. *See id.* (collecting cases).

Defendant did not make clear the "extraordinary circumstances" at play. The Court presumes the extraordinary circumstances to be Defendant's continued lack of awareness of the case. But as discussed above, Defendant does not provide a satisfactory explanation for its persistent failure to receive the related mail. Defendant may also wish the Court to infer extraordinary circumstances because "plaintiffs and Gibraltar lost their opportunity to demand payment from Tully at a time when Tully was preparing to make an application for final payment, and in so doing, would likely have had to certify . . . that all of its obligations to Local 7 had been paid." (Def.'s Mem. at 21). But only Gibraltar, and not Tully, was party to the CBA.

Because Defendant did not submit facts that could support the elements of equitable estoppel, let alone extraordinary circumstances, I find that estoppel is not a meritorious defense to Plaintiff's claims.

### c. Prejudice to the Non-Moving Party

Lastly, the Court considers whether vacating the default judgment will prejudice the non-defaulting party. *Am. All.*, 92 F.3d at 59. A party is prejudiced when its "ability to proceed [with its] case is impaired." *Walden*, 2007 WL 608151, at *4. Litigation expenses are not sufficient for a finding of prejudice, *id.*, and neither is delay alone. *U.S. v. Chesir*, 862 F.Supp.2d 286, 292 (E.D.N.Y. 2012) (citing *Green*, 420 F.3d at 110). Courts can consider whether "delay may thwart plaintiff's recovery or remedy," including whether the delay was so lengthy as to cause loss of evidence, increased difficulties of discovery, or greater opportunity for fraud and collusion. *Id.*

Plaintiffs as the nonmoving party argue that they would be prejudiced because they are owed "a substantial amount," including interest, liquidated damages, audit costs, and attorneys' fees and costs under ERISA. (*See* Pls.' Opp'n at 9). Plaintiffs also complain of delay given that they filed the Complaint more than two years ago. (*Id.*; *see* Dkt. No. 1). Defendant argues that there is no prejudice to Plaintiffs because they have been paid "the full principle amount of the fringe benefit contributions that were owing," and any delay is insufficient because "[t]here will be no loss of evidence in the case and, the witnesses are all believed to still be available." (Def.'s Mem. at 15). Defendant is correct.

Plaintiff's reliance on *Chesir* is misplaced. Unlike *Chesir,* Plaintiff's case is not based on an ancient data set that would need to be recreated. *See* 862 F.Supp.2d at 292-93. Plaintiff and Defendant have both maintained the relevant records which date back only to February 2018 (*See* Dkt. No. 12, Ex. D; Dkt. No. 13 at 2; Varela Decl. ¶ 24). Although Defendant's failure to more fully account for its delay in filing contributed to a finding of willfulness, the delay is not so lengthy as to prejudice Plaintiffs. *C.f. Gonzaga Cortez*, 2019 WL 4256363, at *4, *6 (finding that Defendant's delay in filing the motion to vacate weighed in favor of willfulness and finding that Plaintiff failed to establish prejudice that would warrant denial of the motion).

I therefore find that Plaintiff would not be prejudiced if the Court vacated the default judgment. Even without prejudice, "the absence of [a meritorious defense] is sufficient to support a district court's denial of a Rule 60(b) motion." *Green*, 420 F.3d at 109 (quoting *State Street*, 374 F.3d at 174) (quotations omitted).

### **INTEREST**

I previously recommended, and Your Honor entered, judgment in favor of Plaintiffs in the amount of $513,874.88

representing the delinquent contributions, liquidated damages, attorney's fees, and costs, plus pre- and post-judgment interest. (Dkt. No. 18). Defendant argues that the calculations for pre-judgment interest were incorrect because (A) this Court was not informed of all payments towards the outstanding balance that Defendant made while the litigation was pending; and (B) the Court did not calculate interest for late payment in accordance with the text of the CBA. (Def.'s Mem. at 23).[4]

### A. Balance from Which Interest is Calculated

The parties agree that the outstanding balance at the time the complaint was filed totaled $527,314.90. (*See* Def.'s Mem. at 6; Compl. ¶ 14). They also agree that Defendant made additional payments towards the outstanding principle balance after the complaint was filed. (*See* Pls.' Opp'n at 8). In support of their motion for default judgment, Plaintiffs credited Defendant for a payment of $101,841.10 towards that balance and requested interest based only on the remaining $425,473.80. (Dkt. No. 13 at 2; R&R at 4, n.3). Defendant emphasizes that Plaintiff failed to account for additional payments made between filing the complaint and when the Court entered default judgment and that Plaintiff did not notify the Court of those payments. (Def.'s Mem. at 23; Varela Decl. ¶¶ 33-36; Def.'s Reply at 10). Because Plaintiffs were entitled to request interest based on the full amount owing when the complaint was filed, *see Iron Workers*, 68 F.3d at 1507, I find that the basis for the interest calculations made in the Report and Recommendation and incorporated in the Judgment are correct.

### B. Interest Rate Application

Defendant next argues that the Court's interest calculations are inconsistent with the CBA for two reasons. First, Defendant notes that under the CBA, "interest on the late payment of local fund contributions should have been measured from the 15th day of the month; [and] interest calculated on the late payment of contributions owing to the international funds should have been measured from the 16th day of the month." (Def.'s Mem. at 23). Second, Defendant claims that the Court calculated interest by applying the local and international interest rates to the total amount of the late fringe benefit contributions that were overdue when it should have applied the 10% per annum interest rate only to the contributions due to the local funds and the 15% per annum

---

[4] Without any explanation whatsoever, Defendant offers a new conclusion in its reply that "the amounts computed under the penalty provisions of 29 U.S.C. § 1132(g)(2) also improperly included amounts due to non-ERISA funds that were included in the amount of total contributions owing." (Def.'s Reply at 10). A court has wide discretion to accept or reject factual assertions and arguments made for the first time on reply. *E.g.*, *Watson v. Geithner*, 355 F. App'x 482, 483 (2d Cir. 2009) (court may decline to consider an argument raised for the first time in a reply brief); *Compania Del Bajo Caroni (Caromin), C.A. v. Bolivarian Republic of Venezuela*, 341 F. App'x 722, 724 (2d Cir. 2009) (citations omitted) (finding "[a] district court enjoys broad discretion . . . to consider arguments made for the first time in a reply brief [and] . . . to rely on evidence submitted with the reply papers."); *Scotto v. HSN, Inc.*, No. 13-CV-2471 (ENV) (RLM), 2016 WL 6195692, *7 n.11 (E.D.N.Y. Oct. 21, 2016) (denying defendants attempt to incorporate summary judgment claim for the first time in their reply brief); *Playboy Enters., Inc. v. Dumas*, 960 F. Supp. 710, 720 n. 7 (S.D.N.Y. 1997) ("Arguments made for the first time in a reply brief need not be considered by a court."). Therefore, the Court need not address Defendant's new argument. Further, without deciding the issue, Defendant's conclusion does not appear to be well founded. *See Finkel v. Omega Commun. Servs.*, 543 F. Supp. 2d 156, 162 (E.D.N.Y. 2008) ("With respect to the Non-ERISA Plans, the Second Circuit permits an award of pre-judgment interest for LMRA claims at the Court's discretion and at a rate within the Court's discretion.").

interest rate to the contributions due to the international funds. (*Id.*).

After careful review of the party's submissions and the Report and Recommendation, I find that Defendant misinterpreted the Court's calculations and that interest was properly calculated. Plaintiffs' spreadsheet upon which the Court relied properly indicated the 15th of the month as the date on which interest to local funds accrued and the 16th of the month as the date on which interest to international funds accrued. (Dkt. No. 12, Ex. E). The spreadsheet also applied the 10% and 15% per annum interest rates respectively to the appropriate fund. (*See id.*).

## **CONCLUSION**

For the foregoing reasons, I find that Defendant failed to meet its burden of demonstrating "exceptional circumstances" that would support vacatur of the default judgment against it. *See Galluzzo Equip.*, 223 F.R.D. at 97. I respectfully recommend that the Defendant's motion to set aside the default judgment be denied. Any objection to this Report and Recommendation must be filed with the Clerk of the Court and the Honorable Roslynn R. Mauskopf within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir.1989).

RESPECTFULLY RECOMMENDED.

*Ramon E. Reyes, Jr.*
RAMON E. REYES, JR.
United States Magistrate Judge

Dated: October 23, 2020
Brooklyn, NY