UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
TRUSTEES OF THE LOCAL 7 TILE INDUSTRY WELFARE
FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY
ANNUITY FUND, TRUSTEES OF THE TILE LAYERS LOCAL
UNION 52 PENSION FUND, TRUSTEES OF THE
BRICKLAYERS & TROWEL TRADES INTERNATIONAL
PENSION FUND, AND TRUSTEES OF THE
INTERNATIONAL MASONRY INSTITUTE,

**ORDER ADOPTING REPORT AND RECOMMENDATION**
18-CV-3042 (RRM) (RER)

        Plaintiff,

- against -

GIBRALTAR CONTRACTING, INC.,

        Defendants.
------------------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge.

      The dispute arises out of a collective bargaining agreement ("CBA") that Defendant Gibraltar Contracting, Inc. ("Gibraltar") signed as an Independent Employer with Local Union No. 7 of the Tile Setters and Tile Refinishers Union ("Local 7"). (Def.'s Mem. Doc. No. 20-16 at 1; R&R 1 ("R&R 1") (Doc. No. 15) at 2.) Plaintiffs brought this action pursuant to the Employee Retirement Income Security Act ("ERISA") and Labor Management Relations Act ("LMRA") after Gibraltar failed to make timely fringe benefit fund contributions as required under the CBA. (Def.'s Mem.at 1–2; R&R at 3). Gibraltar failed to answer or otherwise respond to the complaint and Plaintiffs filed a motion for a default judgment, which the Court referred to Magistrate Judge Reyes for a report and recommendation. Magistrate Judge Reyes issued a report recommending that a default judgment be entered against Gibraltar in the total amount of $679,841.65, plus post judgment interest, (Doc. No. 15). Gibraltar did not object to this R&R, so the Court adopted it and entered judgment accordingly. (Doc. No. 16.)

Four months after judgment was entered, Gibraltar served a motion to set aside the default judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. (Mot. to Vacate (Doc. No. 20-16).) When the fully briefed motion was filed, the Court referred that motion to Judge Reyes, who issued a second report and recommendation ("R&R 2") (Doc. No. 21), recommending that the motion be denied. Gibraltar now objects to R&R 2, and Plaintiffs oppose those objections (Doc. No. 23). For the reasons stated below, the Court adopts R&R 2 in all respects.

## BACKGROUND

During the relevant time period, Gibraltar was a small minority-owned business enterprise. (Def.'s Mem. at 1.) Gibraltar signed the CBA with Local 7 as a precondition to performing retiling work for the Brooklyn Battery Tunnel as a subcontractor of Tully Construction Co. Inc ("Tully"). (*Id*.; *see* Pls.' Opp. (Doc. No. 20-17) at 7–8.) Thereafter, Tully fell behind in making payments to Gibraltar, and Gibraltar was then unable to meet the fringe benefit contribution requirement of the CBA. (Def.'s Mem.at 4.) These late payments contributed to financial losses for Gibraltar, and near the end of the tunnel project, Gibraltar "ceased active business operations." (Varela Decl. at ¶ 24).

Gibraltar's President, Christian Varela, received calls from Local 7 requesting that he urge Tully to make the outstanding payments. (*Id*.) Tully was not responsive, and Varela advised Local 7 to contact Tully directly. (*Id*.) "Gibraltar assumed that Local 7 . . . would work something out with Tully in order to obtain the payments that were due." (*Id*.) In March 2019, Varela received a copy of an email exchange between a Tully representative and Plaintiffs' counsel that contained the outstanding contribution amount and the subject line "Local 7 Tile Industry Funds v. Gibraltar Contracting –Contributions Owed." (Def.'s Mem.at 21; Def.'s Mot.,

Ex. H; Varela Decl. ¶¶ 28, 30; *see* Pls.' Opp. at 7.)  Tully issued a check to Gibraltar in the amount specified in that email as the "outstanding amount."  (Varela Decl. ¶ 28.)  Gibraltar then issued a check to Plaintiffs with the notation "Final Payment BB28 (Brooklyn Battery [Job Number])."  (*Id*. at ¶ 29; Def.'s Mot., Ex. D at 6, at 107.)  The notation "was not challenged or commented upon."  (Varela Decl. at ¶ 29.)  Gibraltar "believed that its obligations had been satisfied, "in part because Local 7 never informed Gibraltar that "this action would be, or had been, commenced."  (Def.'s Mem. at 4, 12.)  Until its receipt of the later default judgment, Gibraltar believed that "all fringe benefit obligations owing to Local 7 had been paid by Tully."  (Def.'s Mem. at 5.)

Procedural History

Plaintiff filed this action under ERISA on May 23, 2018 for amounts due under the CBA. Plaintiffs' complaint demanded $527,314.90 in unpaid contributions, "plus interest at a rate of 10% to the Local 7 Benefit Funds and a rate of 15% to the International Benefit Funds; liquidated damages of 20% of the principal amount due; plus all reasonable attorneys' fees, expenses, and costs."  (Compl. at ¶¶ 5, 21.)  In their subsequent motion for default judgment, Plaintiffs calculated interest by breaking down the unpaid principal contribution payments into separate amounts due to the Local Benefit Funds and amounts due to the International Benefit Funds and then charging those separate amounts at the rates of 10% and 15% per annum, respectively, as was provided for in the CBA.  (*See* Hill Decls. D & E (Doc. Nos. 12-4, 12-5).)

Gibraltar does not dispute that the complaint was properly served by personal service upon the New York Secretary of State ("the Secretary") as its statutory agent.  (Def.'s Mem.at 5, 10; *see* Doc. No. 7.)  However, Gibraltar did not appear before this Court or otherwise answer the complaint, (*see* Doc. Entry dated 8/6/2018); and on August 14, 2018, the Clerk of Court

3

entered default. (Doc. No. 9.) Plaintiffs served Gibraltar with the Motion for Default Judgment via first class and certified mail through the United States Postal Service ("USPS") on October 3, 2018. (Doc. No. 14.) After Plaintiffs received no response from Gibraltar, this Court referred the Motion for Default Judgment to Magistrate Judge Reyes, who subsequently recommended that the motion be granted. (R&R 1 at 7.) In that Report and Recommendation, Judge Reyes subtracted from the outstanding principal contributions $101,841.10 in partial payments received after the commencement of the action. (R&R 1 at 3.) To calculate the interest due until judgment, Judge Reyes charged the entire outstanding balance of contributions (less the partial payment) twice, first with the 10% interest rate that the CBA provided for local funds, then with the 15% interest the CBA provided for international funds. (R&R 1 at 6–7.)

That Report and Recommendation was served on Gibraltar via first class and certified mail through the USPS on December 26, 2018. (Doc No. 16.) Although R&R 1 advised Gibraltar that objections to its recommendations had to be filed within fourteen days of Gibraltar's receipt of the R&R 1, and that "[f]ailure to file timely objections may waive the right to appeal" this Court's adopting the R&R (R&R 1 at 8), Gibraltar did not file any objections. Accordingly, the Court adopted the Report and Recommendation on September 26, 2019, (Doc. No. 18). A copy of the order was mailed to Gibraltar the next day. A judgment was subsequently entered, (Doc. No. 19), and mailed to Gibraltar on September 30, 2019. All mailings, including of the R&R 1 were sent to the address that the Secretary of State had on file. (Def's. Mot., Ex. C-2; Doc. Nos. 6, 14, 16.)

**Gibraltar's Motion to Vacate the Default Judgment, and Magistrate Judge Reyes' Report and Recommendation**

On or about January 30, 2020, four months after judgment was entered, Gibraltar served Plaintiffs with a motion to set aside the judgment. (Pls.' Opp. at 13; Def.'s Mot. at 2.) Gibraltar

4

argued that its default should be excused under either Fed. R. Civ. P. 60(b)(1), for excusable neglect, or under Rule 60(b)(6), which permits vacatur of a default judgment for "any other reason." (Mot. to Vacate at 15.) Gibraltar also argued that, since certain payments made after the complaint were not reported to the Court, the Court's final interest calculation was incorrect and should be modified. (*Id*. at 28.)

As to its 60(b)(1) motion, Gibraltar argued that the Court should vacate judgment under the four-factor test for excusable neglect. (*Id*. at 16.) Gibraltar focused its brief on the reason for delay, arguing it had been unaware that the Plaintiffs had commenced the action, that it had never been informed of the litigation by Plaintiffs (even though Varela had remained in touch with them), and that it believed that Tully had fully discharged its obligations to Plaintiffs. (*See id*. at 18.) Gibraltar and its counsel attest that they did not learn of the instant action until October 3, 2019, when Varela received a copy of the Court's Order Adopting Report and Recommendation. (Def.'s Mem. at 5; Doc. No. 20-2 ("Janice Decl.") at ¶ 2.) To date, Varela has been unable to locate the summons and complaint even after discussions with his clerical staff regarding legal mail received. (Def.'s Mem. at 14–15.) Nevertheless, upon learning of the judgment, Gibraltar immediately contacted its counsel and initiated an internal investigation to determine the whereabouts of the summons and complaint. (Doc. No. 20-18 ("Def.'s Reply") at 3-4; Varela Decl. at ¶¶ 5, 7.)

Gibraltar also argued that it had meritorious defenses weighing in favor of vacatur. First, it argued that the Plaintiffs waived interest for late payments before February 2018, by failing to include those amounts in their complaint; and, because they never gave Gibraltar notice that they would insist on payment of interest thereafter, they waived their right to interest and liquidated damages during all periods relevant to the complaint. (*Id*. at 24–25.) Second, it argued that there

5

had been accord and satisfaction when Plaintiffs told Tully the amount outstanding, Tully issued a check to Gibraltar in that amount, and Gibraltar paid the amount to Local 7. (*Id*. at 25–26.) Third, Gibraltar argued that, since Local 7 was aware that the check in question was not the full amount outstanding, it should have insisted on full payment when it received payment from Gibraltar. (*Id*. at 27.) Since it did not do so, Gibraltar lost its opportunity to insist on further payment from Tully, and Plaintiffs should be estopped from insisting on further payments. (*Id*.)

Finally, Gibraltar moved to modify Judge Reyes' calculation of interest on two separate grounds. First, Gibraltar argued that, although Judge Reyes accounted for one partial payment made during the pendency of this action in his interest calculation, the calculation failed to account for the fact that the entire balance owed to the Plaintiffs had been paid by the time of the default judgment. (*Id*. at 28–29.) Second, Gibraltar argued that Judge Reyes incorrectly calculated interest in two respects: by failing to apply the correct reference dates for calculating interest rates, and by incorrectly calculating interest on the entire principal when the CBA provided for separate interest rates of 10% for unpaid benefit contributions due to the Local Benefit Funds and 15% for unpaid benefits due to the International Benefit Funds. (*Id*. at 29–30.)

On March 11, 2020 – the day on which the fully briefed Rule 60(b) motion was filed – the Court referred the motion to Magistrate Judge Reyes for a Report and Recommendation. On October 23, 2020, Magistrate Judge Reyes issued his R&R, recommending that the motion to vacate be dismissed in all respects and that the motion to recalculate interest due be denied. (R&R 2 (Doc. No. 21).) Judge Reyes applied the test set forth in *American Alliance Insurance Co. v. Eagle Insurance Co.*, which asks (1) whether the default was willful, (2) whether the defendants have a meritorious defense, and (3) whether vacating the default will prejudice the

non-defaulting party. (*Id*. at 5 (citing 92 F.3d 57, 59 (2d Cir. 1996)).) First, Judge Reyes found that Gibraltar's delay was willful. (*Id*. at 7–8.) Gibraltar had no adequate excuse for failing to receive multiple mailings and, even after the time it admits to receiving a mailing from Plaintiffs, it delayed over three months before filing a motion to vacate. (*Id*. at 7.) Even if, as Gibraltar argued, it needed time to gather its records, that does not explain such a long delay. (*Id*. at 8.) Overall, Gibraltar's "unexplained delay and repeated failure to receive mail" weighed in favor of denying their motion. (*Id*.)

Second, Judge Reyes found that none of Gibraltar's offered defenses "raise[d] a serious question as to the validity of Plaintiffs' allegations." (*Id*. at 9.) As to waiver, the CBA provided that acceptance of late contributions would not constitute a waiver. (*Id*. at 10.) Nor did Plaintiffs waive their right to payments due outside of February, March, and April of 2018 by filing a complaint seeking damages only related to contributions for these months, because these were the months for which contributions and interest were outstanding at the time of filing. (*Id*.) Plaintiffs simply followed "the prevailing view in the Circuit" by bringing "suit for the outstanding principal amount and related interest due at time of filing." (*Id*.) As to accord and satisfaction, Judge Reyes found there was no accord. (*Id*.) Though Local 7 accepted late contributions from Tully, it never demonstrated any intent to accept those late contributions in lieu of the interest and liquidated damages provided by the CBA. (*Id*. at 10–11.) Thus, the necessary intent to form an accord was lacking. (*Id*. at 11.) As to estoppel, Judge Reyes found that Gibraltar failed to state facts showing a material misrepresentation, reliance on the misrepresentation or extraordinary circumstances. (*Id.*) Specifically, Gibraltar unreasonably relied on its own believe that the late contribution by Tully discharged its own obligations under the CBA. (*Id*. at 11–12.) While Judge Reyes found little possibility of prejudice, he held that the

absence of prejudice would not by itself justify vacatur. (*Id*. at 12.) Finally, Judge Reyes rejected Gibraltar's arguments that (1) he had used the wrong principal amount and (2) had applied the wrong rates when he calculated the interest due. (*Id*. at 13–14.)

**Gibraltar's Objections and Plaintiffs' Opposition**

Gibraltar submitted a letter brief "in opposition to the confirmation" purporting to object to Judge Reyes' findings, but this document mixes some specific objections into what otherwise amounts to a vague rehashing of its motion to vacate. (Objs. (Doc. No. 22).) Gibraltar raises arguments regarding the elements of (1) willfulness and (2) its meritorious defenses and maintains that Judge Reyes incorrectly calculated the interest and damages owed.

First, Gibraltar addresses Judge Reyes' findings as to its willfulness in failing to answer or otherwise respond. (*Id*. at 2–3.) This argument adopts Judge Reyes' conclusions and rehashes the motion to vacate. Gibraltar explicitly approves Judge Reyes' interpretation that "a finding of willfulness in the context of a motion to vacate a default must be based on conduct that is more than merely negligent." (*Id*. at 2.) Gibraltar then acknowledges Judge Reyes' conclusion that "defendant's inability to adequately explain Gibraltar's failure to receive the two subsequent mailings . . . was . . . sufficient to find that the defendant's default was deliberate." (*Id*.) Gibraltar then concedes that it "did not, and does not, have any excuse for not receiving the mailings." (*Id*.) Gibraltar finally argues that "a finding of willfulness should not have been made" because it had no reason to believe under the circumstances that it would face liability and that "the background of the course of dealings between the parties should have informed the discretion of the Magistrate." (*Id*. at 2–3.) Gibraltar further acknowledges Judge Reyes' finding that the three-month delay was facially unreasonable, and then goes on to repeat its prior

8

argument that the delay was reasonable in light of its need to gather relevant records and conduct an internal investigation. (*Id*. at 3.)

Second, Gibraltar makes one specific objection of law regarding the defense of waiver and otherwise rehashes its arguments regarding accord and satisfaction, while acknowledging that it has no basis to dispute Judge Reyes' findings as to its defense of equitable estoppel. (*Id*. at 4–5.) As to its defense of waiver, Gibraltar specifically objects that "the Magistrate overlooked the line of cases that hold that once a waiver has taken place, the waiver can be withdrawn to the extent that it is executory 'provided that the party whose performance has been waived, is given notice of withdrawal and a reasonable time after notice within which to perform.'" (*Id*. at 4.) Plaintiffs thus owed Gibraltar notice that it would insist on future interest payments, after indicating that it would not enforce this part of the CBA. (*Id*.) As to the defense of accord and satisfaction, Gibraltar rehashes its arguments, acknowledging Judge Reyes' holding that Plaintiffs' negotiations concerned only the principal amount and evinced no intent to accept those payments in satisfaction of Gibraltar's interest obligations under the CBA. (*Id*.) Gibraltar therefore "submitted that a question of fact exists with respect to the intent of the parties at the time that Tully requested that plaintiff inform it of the amount owed." (*Id*.) Gibraltar explicitly declined to challenge Judge Reyes' findings as to equitable estoppel. (*Id*. at 5.) Finally, Gibraltar again argued that Judge Reyes had miscalculated the amount of interest due. (*Id*. at 5–8.)

In opposition, Plaintiffs argue that Gibraltar's purported objections to Judge Reyes' R&R on the motion to vacate should be reviewed only for clear error, because Gibraltar "fail[ed] to allege or identify a single instance [] where the Magistrate misapprehended any facts or law such that the R&R is objectionable." (Pls.' Opp. to Def.'s Objs. ("Opp.") (Doc. No. 23) at 2–6.) In

9

particular, they argue that Gibraltar's arguments regarding the willfulness of its default and its defenses of waiver and accord and satisfaction raise no specific objections either to Judge Reyes' findings of law or of fact, and therefore should be reviewed only for clear error. (*Id*. at 2–6.) Because Judge Reyes' findings were correct with respect to all three arguments, they argue, Gibraltar's objections should be denied. While Plaintiffs allow that Gibraltar's argument about Judge Reyes' failure to consider the "course of dealing" between the parties arguably raises an objection to that section which disposed of the defense of waiver, the objection is nonetheless baseless. (*Id*. at 2–3.) Finally, because case law of the Second Circuit permits interest to be calculated on all principal due at the time of the filing of the complaint, Judge Reyes' calculation of interest was correct. (*Id*. at 5–6.)

## STANDARD OF REVIEW

Rule 72(b)(2) provides that, within 14 days after a Magistrate Judge enters a Report and Recommendation on a dispositive matter, "a party may serve and file specific written objections to the proposed findings and recommendations" with the District Judge. The Court reviews all such objections de novo. *United States ex rel. Coyne v. Amgen, Inc.*, 243 F. Supp. 3d 295, 297 (E.D.N.Y. 2017), *aff'd sub nom. Coyne v. Amgen, Inc.*, 717 F. App'x 26 (2d Cir. 2017). However, "objections that simply reiterate the original arguments, without identifying a specific error in the report and recommendation, *e.g.*, why a specific finding or conclusion is faulty or the magistrate judge erred in rejecting a specific argument, are reviewed under the clear error standard." *Alvarez Sosa v. Barr*, 369 F. Supp. 3d 492, 497 (E.D.N.Y. 2019). Similarly, "objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke de novo review." *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487

10

(S.D.N.Y. 2009) (quoting *Vega v. Artuz*, No. 97-CV-3775, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)).

## DISCUSSION

Excusable Neglect Under 60(b)(1)

The Court may set aside a default judgment "[o]n motion and just terms" where the movant demonstrates excusable neglect. *See* Fed. R. Civ. P. 60(b)(1). Setting aside a default judgment rests on the court's sound discretion. *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). To guide its discretion, the Court must consider (1) whether the default was willful; (2) whether the defendants have a meritorious defense; and (3) whether vacating the default will prejudice the non-defaulting party. *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d at 59. "[I]n ruling on a motion to vacate a default judgment, all doubts must be resolved in favor of the party seeking relief from the judgment." *Green*, 420 F.3d at 104. Gibraltar contends that its default was not willful under (1), and that it possesses the meritorious defenses of waiver and accord and satisfaction under (2).

Except for one point, Gibraltar raises no specific objections as to Judge Reyes' holding that their default was willful. Gibraltar concedes it had no excuse for default, thus agreeing with Judge Reyes' conclusion on this point. Indeed, Gibraltar offers no reason at all, not only for the original default, but for failing to receive every single mailing up to the Court's Order adopting R&R 1, even though all mailings were sent to the same address. Gibraltar also rehashes its arguments that the delay was reasonable in light of its need to gather records and conduct an internal investigation, without specifically objecting to Judge Reyes' conclusions as to any fact or law. Because Gibraltar repeats arguments made to Judge Reyes, the Court reviews these points only for clear error and finds none.

11

While Gibraltar does object specifically that Judge Reyes failed to consider "the background of the course of dealings between the parties," Judge Reyes considered all the evidence presented to him by the parties. Reviewing this contention de novo, nothing in the course of dealing between them suggested to Judge Reyes, nor does any part of the record now suggest to the Court, that the course of dealings between the parties would have led Plaintiffs to expect Gibraltar to ignore a properly served complaint.

Likewise, Gibraltar makes no specific objection to Judge Reyes' findings regarding the existence of a meritorious defense. However, even under a de novo review, the objections here lack merit. Gibraltar insists that Judge Reyes should have found that the Plaintiffs waived their right to interest and liquidated damages. In particular, it argues that Judge Reyes overlooked cases holding that, once a waiver takes place, it may only be revoked on notice to the party affected. Waiver is "a litigant's intentional relinquishment of a known right" or contractual protection. *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61 (2d Cir. 1999). Under this standard, Judge Reyes properly found no evidence that any of the Plaintiffs intended to waive their entitlement to interest or liquidated damages. Therefore, any cases regarding the revocation of waiver are irrelevant.

Gibraltar repeats its arguments regarding accord and satisfaction. While this argument is substantively identical to the one it made above, the Court, out of caution, will review this point de novo, since it concerns the bulk of the judgment amount at issue. "An accord and satisfaction is an agreement between two parties under which one party accepts a stipulated performance by the other party in discharge of an unresolved obligation by the latter party." *Stahl Mgmt. Corp. v. Conceptions Unlimited*, 554 F. Supp. 890, 892–93 (S.D.N.Y. 1983) (citing *Rein v. Wagner*, 268 N.Y.S.2d 659, 662, *modified on other grounds*, 269 N.Y.S.2d 578, (1965), *aff'd*, 18 N.Y.2d

12

989 (1966)). "To establish an accord and satisfaction, [there] must [be] an intention to discharge the old obligation when the new one has been performed." *Id*. The party asserting the defense bears the burden of proof. *Clarke v. Max Advisors, LLC*, 235 F. Supp. 2d 130, 144 (N.D.N.Y. 2002) (citing *Env't Prods. & Servs. Inc. v. Consolidated Rail Corp.*, 728 N.Y.S.2d 256, 258 (N.Y. App. Div. 2001)). Gibraltar has done no more than produce a copy of a check which purported to be a "final payment" of the contributions they owed. There is no proof that the Plaintiffs or their agents accepted this payment with intent to enter into an accord. This objection is therefore without merit.

### Calculation of Amounts Due

In its most recent filing Gibraltar appears to object that the final amount due should not include principal payments received by Plaintiffs after the commencement of the action. While it does not make this argument directly, its final calculation of the amount due excludes the entire amount of principal payments due at the time of the filing of the complaint. Nevertheless, Gibraltar did not argue in its original motion that these amounts should be excluded from the final judgment, and the Court has already found without merit the argument that there was an accord and satisfaction for these amounts. Therefore, to the extent that Gibraltar objects that the unpaid principal should be excluded from the judgment, the Court finds the argument to be without merit.

Gibraltar specifically objects to that aspect of the R&R that recommended the payment of pre-judgment interest. However, the only issue properly before the Court is whether vacatur should be granted under 60(b). Because the Court has already found without merit Gibraltar's motion to vacate, there is no need to reach the calculation of interest. Doing so would be tantamount to entertaining an untimely motion to object to the first R&R, in which interest was

13

originally calculated.  But Gibraltar defaulted in filing objections to that R&R and has not shown any reason why the Court should reopen that judgment and its calculation of damages.

## CONCLUSION

Upon de novo review of the Report and Recommendation of Magistrate Judge Reyes dated October 23, 2020 (Doc. No. 21), and for the reasons stated herein, the Court overrules defendant Gibraltar's objections to said Report and Recommendation (Doc. No. 22), and denies Gibraltar's Motion to Vacate the Default Judgment entered on September 30, 2019  (Doc. No. 20).  As such, the Judgment of September 30, 2019 remains in full force and effect.

SO ORDERED.

Dated: Brooklyn, New York
       March 31, 2021

*Roslynn R. Mauskopf*

_____
ROSLYNN R. MAUSKOPF
United States District Judge